# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| BRYON HICKEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:20-cv-3479 |
| | § | |
| EQUIFAX INFORMATION | § | With Jury Demand Endorsed |
| SERVICES LLC, EXPERIAN | § | |
| INFORMATION SOLUTIONS, Inc., | § | |
| TRANS UNION LLC, INNOVIS DATA | § | |
| SOLUTIONS, Inc., and NATIONSTAR | § | |
| MORTGAGE LLC, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Bryon Hickey ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, Innovis Data Solutions, Inc., and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.     Four of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the

"FCRA"). Nationstar Mortgage LLC is also liable for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Bryon Hickey, a natural person residing in Polk County, Florida, is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting and violations of RESPA.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa,

California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Innovis Data Solutions, Inc., which may also hereinafter be referred to as "Innovis", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 250 E. Town Street, Columbus, Ohio 43215. Innovis is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Innovis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties.

Innovis disburses such consumer reports to third parties of contract for monetary compensation.

7. Upon information and belief, Defendant Nationstar Mortgage, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, TransUnion, and Innovis.

### III. JURISDICTION AND VENUE

9. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arising under federal law—28 U.S.C. §§ 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under state law which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental

jurisdiction over said claims. 28 U.S.C. § 1367.

10.     Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11.     Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

12.     In November 2006, Plaintiff secured a mortgage loan for his property located at W 1322 Pipkin Road West, Lakeland, Florida, with JPMCB Home Lending (the "mortgage account").

13.     In September 2010, Plaintiff filed for Chapter 13 Bankruptcy.

14.     A mortgage is not discharged under a chapter 13 bankruptcy if a debtor complies with the requirements of her bankruptcy plan.  11 U.S.C. § 1328(a)(1).  Plaintiff complied with the requirements of her bankruptcy plan.

15.     In January 2015, Nationstar acquired Plaintiff's mortgage loan (the "Nationstar

mortgage").

16.     Thereafter, in October 2015, Plaintiff successfully completed his chapter 13 bankruptcy plan and was granted discharged in November 2015.

17.     Plaintiff made timely payments on the Nationstar mortgage from January 2015 to September 2017.  Attached as Exhibit A and incorporated by reference is a copy of Plaintiff's Nationstar payment history.

18.     Plaintiff and Nationstar thereafter entered a natural disaster forbearance agreement in the wake of Hurricane Irma on or before September 2017.

19.     Plaintiff then resumed payments at the conclusion of his forbearance period in January 2018 until Nationstar transferred the mortgage account in approximately October 2019. *See* Exhibit A (Pl's Payment Hist.)

20.     Sometime in October 2019, Plaintiff pulled his Equifax credit report and noticed that it was not accurate.

21.     Within the Equifax credit report, Plaintiff noticed that it reported his payments in October and December 2015, January and July 2016, and March and July 2017 as 30-59 days late, failed to report any payment history after August 2017, and misstated his monthly payment amount.

22.     Equifax's reporting was incorrect.  First, because no payment information should have been reporting during the completion of Plaintiff's Chapter 13 Bankruptcy Plan from September 2010 through November 2015. Second, because Equifax inaccurately reported 2017 late payments.  Finally, Plaintiff made payments from January 2018 until the loan was transferred in 2019, none of which were reported.

23.     A redacted copy of Plaintiff's Equifax Credit Report is attached hereto as Exhibit

"B" and incorporated in by reference.

24.    Sometime in November 2019, Plaintiff pulled his Experian credit report and noticed that it was likewise inaccurate.

25.    Within the Experian credit report, Plaintiff noticed that it reported his payments in July, August, October and December 2015, July and January 2016, and March, July and August 2017 as 30-days late, and failed to report any payment history after August 2017.

26.    Experian's reporting was incorrect.  First, because no payment information should have been reporting during the completion of Plaintiff's Chapter 13 Bankruptcy Plan from September 2010 through November 2015. Second, because Experian inaccurately reported 2017 late payments.  Finally, Plaintiff made payments from January 2018 until the loan was transferred in 2019, none of which were reported.

27.    A redacted copy of Plaintiff's Experian Credit Report is attached hereto as Exhibit "C" and incorporated in by reference.

28.    Sometime in October 2019, Plaintiff additionally pulled his Trans Union credit report and noticed that it was not accurate.

29.    Within the Trans Union credit report, Plaintiff noticed that it reported his payments in July, August, October and December 2015, January and July 2016, and March, July and August 2017 as 30-59 days late, failed to report any payment history after August 2017, and misstated his monthly payment amount.

30.    Trans Union's reporting was incorrect.  First, because no payment information should have been reporting during the completion of Plaintiff's Chapter 13 Bankruptcy Plan from September 2010 through November 2015. Second, because Trans Union inaccurately reported 2017

late payments.  Finally, Plaintiff made payments from January 2018 until the loan was transferred in 2019, none of which were reported.

31.     A redacted copy of Plaintiff's Trans Union Credit Report is attached hereto as Exhibit "D" and incorporated in by reference.

32.     Sometime in December 2019, Plaintiff pulled his Innovis credit report and noticed that it too was not accurate.

33.     Within the Innovis credit report, Plaintiff noticed that it reported his payments in July, August, October and December 2015, January and July 2016, and March, July and August 2017 as 30-days late, and failed to report any payments after August 2017.

34.     Innovis's reporting was incorrect.  First, because no payment information should have been reporting during the completion of Plaintiff's Chapter 13 Bankruptcy Plan from September 2010 through November 2015. Second, because Innovis inaccurately reported 2017 late payments.  Finally, Plaintiff made payments from January 2018 until the loan was transferred in 2019, none of which were reported.

35.     A redacted copy of Plaintiff's Innovis Credit Report is attached hereto as Exhibit "E" and incorporated in by reference.

36.     On or about February 19, 2020, Plaintiff sent direct disputes to Equifax, Experian, Trans Union, and Innovis and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.  Plaintiff attached a copy of his Nationstar payment history to his February 19, 2020 dispute letters.

37.     Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, Trans Union, and Innovis on February 19, 2020 are each attached as Exhibits "F", "G", "H", and "I", respectively and incorporated in by reference.

38.     Plaintiff received no responses from Equifax, Experian, TransUnion or Innovis to his February 19, 2020 dispute letters.  Failure to reinvestigate and respond is an unambiguous violation of the FCRA.

39.     After receiving no responses to his earlier dispute letters, Plaintiff again sent direct disputes to Equifax, Experian, Trans Union, and Innovis on or about June 6, 2020, and similarly requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account.  With his June 6, 2020 letters, Plaintiff again attached a copy of his Nationstar payment history.

40.     Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, Trans Union, and Innovis on June 6, 2020 are each attached as Exhibits "J", "K", "L", and "M", respectively and incorporated in by reference.

41.     Equifax responded to Plaintiff's second dispute letter on June 17, 2020. A redacted copy of Equifax's response is attached hereto as Exhibit "N" and incorporated herein by reference.

42.     Therein, Equifax wrote, "[t]he disputed item is not currently reporting on the Equifax credit file."

43.     Equifax's response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline. Instead, Equifax

deleted the tradeline.  Plaintiff requested accurate reporting, not deletion.

44.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

45.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

46.     In the alternative, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

47.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

48.     Experian again failed to respond to Plaintiff's second dispute letter, in violation of its duty to respond and reinvestigate.

49.     Experian's non-response was not the result of a reasonable investigation into Plaintiff's dispute and Experian clearly failed to remedy the inaccuracies within the Nationstar tradeline and failed to provide any explanation as to why it reported the Nationstar tradeline with late payments the way it did.

50.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

51.     Upon the Plaintiff's request to Experian for verification and addition regarding the Nationstar mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

52.     In the alternative, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

53.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

54.     Trans Union responded to Plaintiff's second dispute on June 16, 2020. A redacted copy of Trans Union's response is attached hereto as Exhibit "O" and incorporated herein by reference.

55.     Therein, Trans Union wrote, "[a]fter reviewing your dispute request, we found the information you disputed does not currently appear on your TransUnion credit report.  It's possible the information was updated before we reviewed your report or it was reported by one of the other credit reporting companies."

56.     Trans Union's response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it reported the Nationstar tradeline with late payments the way it did. Instead, Trans Union deleted the tradeline.  Plaintiff requested accurate reporting, not deletion.

57.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding

Plaintiff's Nationstar account.

58.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

59.     In the alternative, Trans Union failed to contact Nationstar and, therefore, failed to perform any investigation at all.

60.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

61.     Innovis responded to Plaintiff's dispute sometime in June 2020. A redacted copy of Innovis's response is attached hereto as Exhibit "P" and incorporated herein by reference.

62.     In its response, Innovis stated simply that the item was no longer on the Innovis credit report.

63.     Innovis's response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it reported the Nationstar tradeline with late payments the way it did. Further, Plaintiff did not request to have the tradeline deleted.

64.     Innovis chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

65.     Upon the Plaintiff's request to Innovis for verification and addition regarding the

Nationstar mortgage account, and in accordance with Innovis's standard procedures, Innovis did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Nationstar tradeline.

66.     In the alternative, Innovis failed to contact Nationstar, therefore, failed to perform any investigation at all.

67.     In the alternative to the allegation that Innovis failed to contact Nationstar, it is alleged that Innovis did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

68.     On February 19, 2020, Plaintiff sent a direct dispute to Nationstar asking why it reported his payments late in 2015 and 2016 when he was still in the process of completing the plan under Chapter 13 Bankruptcy; why no payment history was reported beyond August 2017 and why his monthly payment amount was reported inaccurately ("first RESPA letter")  Plaintiff attached a copy of his payment history.

69.     A redacted copy of Plaintiff's unsigned first RESPA letter to Nationstar is attached hereto as Exhibit "Q" and incorporated in by reference.

70.     Nationstar failed to respond to Plaintiff's February 19, 2020 letter in violation of the FCRA.

71.      Plaintiff wrote to Nationstar again on June 6, 2020. Therein, Plaintiff sufficiently identified himself as a borrower, the account in question, perceived errors committed by Nationstar regarding this account, and specifically requested that Nationstar investigate and correct its reporting of his account ("second RESPA letter").

72.     A redacted copy of Plaintiff's unsigned second RESPA letter to Nationstar is

attached hereto as Exhibit "R" and incorporated in by reference.

73.    Nationstar again failed to respond to Plaintiff's second RESPA letter and again violated the FCRA.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

74.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

75.    Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

76.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

77.    Equifax knew or should have known Plaintiff's account status and payment history were inaccurate, but Equifax continued to prepare a patently false consumer report concerning Plaintiff.

78.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

79.    After Equifax knew or should have known Plaintiff's payment history was inaccurate, it failed to make the corrections.

80.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages,

including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

81.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

82.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

83.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

84.     Equifax violated 1681i by failing to update inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

85.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

86.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

87.    The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

88.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

89.    Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

90.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

91.    Experian knew or should have known of Plaintiff's account status and payment history, but Experian continued to prepare a patently false consumer report concerning Plaintiff.

92.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

93.    After Experian knew or should have known Plaintiff's payment history was inaccurate, it failed to make the corrections.

94.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

95.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

96.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

97.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

98.    Experian violated 15 U.S.C. § 168li on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to the furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

99.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

101.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681e(b))

102.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

103.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

104.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

105.    Trans Union knew or should have known of Plaintiff's account status and payment history, but Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

106.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

107.    After Trans Union knew or should have known Plaintiff's and payment history was inaccurate, it failed to make the corrections.

108.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

109.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

110.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

111.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

112.    Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

113.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

114.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

115.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VII – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

116.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

117.    Innovis violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

118.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

119.    Innovis knew or should have known of Plaintiff's payment history was inaccurate, but continued to prepare a patently false consumer report concerning Plaintiff.

120.    Despite actual and implied knowledge that Plaintiff's credit report was and is not accurate, Innovis readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

121.    After Innovis knew or should have known Plaintiff's payment history was inaccurate, it failed to make the corrections.

122.    As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of

credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

123.    Innovis's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

124.    The Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### COUNT VIII – INNOVIS'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

125.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

126.    Innovis violated 15 U.S.C. § 1681i on multiple occasions by failing to update or delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

127.    As a result of Innovis's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

128.    Innovis's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to

15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

129.    The Plaintiff is entitled to recover costs and attorney's fees from Innovis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT IX – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

130.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

131.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit file with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute of the Nationstar representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

132.    As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in his attempt to refinance, loss in his ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

133.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

<strong>COUNT X – NATIONSTAR'S VIOLATION OF RESPA</strong>

134.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

135.     Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

136.     Nationstar has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

137.     Nationstar further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

138.     Nationstar's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

139.     Defendant Nationstar is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

140.     Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Nationstar as provided in 12 U.S.C. § 2605(f).

<strong>VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR</strong>

141.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the

principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

142.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or state law, including Texas.

143.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

144.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

145.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

146.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

147.    Defendants have negligently and/or willfully violated various provisions of the FCRA and Nationstar negligently and/or willfully violated RESPA and are thereby liable unto Plaintiff.

148.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive

damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, denial in his attempt to refinance his mortgage, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Bryon Hickey, prays that this Honorable Court:

A.     Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Innovis Data Solutions, Inc., and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, Nationstar's violation of RESPA, applicable state law, and common law;

B.     Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.     Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.     Order that the CRA Defendants, Equifax Information Services LLC, Experian

Information Solutions, Inc., Trans Union LLC, and Innovis Data Solutions, Inc., and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

   E. Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>November 24, 2020</u>

      Respectfully submitted,

      <u>*/s/ Matthew P. Forsberg*</u>
      Matthew P. Forsberg
      TX State Bar Number 24082581
      Matt@FieldsLaw.com
      FIELDS LAW FIRM
      9999 Wayzata Blvd.
      Minnetonka, Minnesota 55305
      (612) 383-1868 (telephone)
      (612) 370-4256 (fax)

      By: <u>*/s/ Jonathan A. Heeps*</u>
      Jonathan A. Heeps
      State Bar No. 24074387
      LAW OFFICE OF JONATHAN A. HEEPS
      Post Office Box 174372
      Arlington, Texas 76003
      Telephone (682) 738-6415
      Fax (844) 738-6416
      jaheeps@heepslaw.com

      COUNSEL FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

November 24, 2020                              */s/ Matthew P. Forsberg*
Date                                                    Matthew P. Forsberg